This court is now in session. You may receive it. The clerk will call the next case. 3-15-0201, consolidated with 3-15-0202, Enbridge Energy, Limited Partnership, and the lead by John Spacia v. Chicago Title Land Trust Co., et al., accounts, by Thomas Pluro. Mr. Pluro, you may proceed. Your Honor, Counsel, this will be brief, two minutes. Why does this case matter? If the state uses eminent domain power to take property from a landowner, the landowner has the right to just compensation. Now, there's a lot in the brief. I'm not going to go over all of that. But there's one issue that is critically important for this court to rule upon. Does a landowner whose land is being taken through eminent domain have the right to testify about the value of that property that's being taken from him? We list a whole line of cases on this point. The trial court barred the landowner from testifying about damages ruling they weren't experts. Now, that just isn't the law in Illinois. The landowner has the right to testify about the value of what's being taken from him. Period. There can be rare instances where a landowner might not be qualified, but we're not dealing with any of that here. Fifteen more seconds. My father came from Lithuania during World War II. The Russians came into his country and took his family's land and put him in a concentration camp. Now, he escaped and came here to America. He chose America because the government can't just take property from you without just compensation. We can debate until the cows come home whether this project was necessary, whether it constitutes a public use, or whether it was needed. But one thing there is no debate on. Mr. Hanno had the right to take the witness stand, look the jury in their eyes, and give his opinion on the value of the property that they were taking from him. A lot of other things in the brief. I'm happy to answer any questions if the court has any, or we can do it on rebuttal. I do have a question. Sure. It is regarding the traverse motion and the first request when you come in and appear. It seems from reading the transcripts that you are asking for discovery on all of the points that are listed in your traverse motion. Yes. And because the case seemed to move very quickly, that you say, well, I'm going to start with, or if I'm limited, I'm going to start with this deposition of the appraiser. That's correct. And the reason was to establish a timeline more than a value. Am I following that correctly? Kind of. Maybe I'll explain it. One of the things that the law in Illinois is, is that if in fact a condemner, whether it's the state or a private company, want to come in and take your land, you have to prove that the offer that you're proposing is fair market value. And historically it's been, you've got to show the landowner an appraisal that's been done. But now that was the Hunziker case, and that was overruled, and they said, no, you don't have to do that. But the landowner shouldn't, especially in a small case like this, shouldn't be required to go out and have to hire his own appraiser to determine whether or not the offer that's being made is a fair market value. And so we wanted to take the deposition to say, how is it if you didn't go upon the land, you didn't look at the land, how was the offer made to these individuals, in this case Mr. Hanno, the other cases settled, that certified that that is a fair, good faith, they talk about a good faith offer. And we weren't allowed to do that. The court said, no, you can't do that. Well, we can, given the way this case went, it's somewhat odd, but even if we had a 10-day evidentiary hearing, I know that ruling on whether the traverse was or wasn't going to be granted, because that's pretty much discretionary, that's the court. The court decides that, not a jury. But that's why we needed to depose the expert, their expert. Any other questions? Thank you. Thank you. May it please the court, counsel, why don't I start by doing this, why don't I answer the question about what they've raised here in the argument today is issue number one, and that is, does the landowner have a right to testify? And I think the answer to that, this court has answered that question, many courts have answered that question. The answer is yes, if they're qualified and if they're properly disclosed. And if their opinions are based on proper factors. So, in this particular case... It's pretty loose when it comes to the landowner, as long as they're knowledgeable about the land, isn't it? I mean, we're not talking about like other experts. You know, there's been more of an allowance for property owners to testify about the value of their land. I agree with that. Isn't that right? I agree with that, I agree with the tenor of the court, certainly the decision is to give broad latitude for a landowner to testify. But here's what happened in this case. The Rule 213 disclosures, if you look at the Rule 213 disclosures, the landowner has no opinion of the value of the temporary easement. His opinions of value in this case are based on the existence of a permanent easement that doesn't exist. It was amended out of the case without an objection. That's November 2nd, 2014. So, the landowner's opinions here, first of all, there's no opinion disclosed, there's no opinion in a deposition of the value of the temporary easement. That's the first thing. The second thing is that even at trial, when the landowner is called, there's no attempt to make a showing of his qualifications to testify about the value of the temporary easement. That's at trial. In the offer of proof, there's no effort to show either the qualifications or even after the trial court ruled. If you look at the offer of proof for Mr. Hanno, there's no statement of the value of the temporary easement. So, I would submit to the court that in this particular case, yes, the landowner had a right to testify, but he had no opinions. He had no opinion that was properly disclosed. If you read the transcript here, what the landowner really wanted to testify about is the remainder damage. And that brings us to this point. The trial court ruled in this case in terms of the, with respect to all of these issues that are raised on the counterclaim. The trial court issued this ruling during the case, based on the trunk line decision of the Illinois Supreme Court. The trial court says, quote, listen very carefully. There will be no one who will be allowed to testify as to damage to the remainder on the Hanno track as a result of the temporary easement. That's the ruling. Now, that's as clear as I can be on that. What's interesting in this case is that ruling has not been appealed. There is no argument on appeal that's been made to contest the trial court's decision that this two-year temporary easement did not cause and could not cause damage to the remainder, based on the evidence that was presented at trial. So, all of these issues that have been raised, the landowner's testimony, the landowner's testimony encompasses his consideration of a permanent easement that doesn't exist. It considers the existence of a pipeline that does not exist on his property. So, all of these issues about evidentiary errors, the issues about witnesses, including the landowner and Mr. Kelly, Mr. Suman, none of those are really before the court, because there was no appeal of the decision that remainder damage could not exist, did not exist in this case as a result of a temporary easement. There's an issue with the, when the valuation, the expert's valuation took place, right? Pardon me? When the expert's valuation took place. Okay. So, I'll explain, I'll explain that issue. The, and get back to Justice O'Brien, your question. The procedure in this case that was followed by Enbridge was that prior to offers being made, a land market study was conducted by a licensed appraiser with the MAI designation. We produced, as part of those reverse proceedings, we produced that land market study. Offers were made based on the land market study. And just so we're clear, the basis for the offer was given to the landowner at the time of the final offer letter. That's found at common law record in the trust 6005 case at page 343. Now, what was the date of that compared to the date of filing? The date of? The filing of the eminent domain procedure. Okay. So, initial offers and the final offer were made in May. The complaint was filed 30 days later. 30 days after the final offer, the complaint was filed. There were no responses to either offer. There was no response to the initial offer. There was no response to the final offer. So, the first valuation took place before the final offers were made. Our position is that's what resulted in, I think the numbers are 381 out of 386 cases, tracts, being resolved prior to trial. It's because the offers that were made were fair. In this particular case, the evidence bears that out. The evidence shows that at trial, the fair market value of this temporary easement was $700. The final offer, four times that, $2,850. Even their disclosed expert, who they decided to not call at trial, if he had used the proper acreage, could not come up with a value for the temporary easement that exceeded the final offer that was made by Enbridge. When Justice O'Brien, you asked the question about the Traverse, and about what discovery was requested at the Traverse, the report of proceedings from September 2nd of 2014 is very clear. That counsel asked for the deposition of appraiser Bates for the purpose of establishing that no appraisal was done. The trial court ruled that was unnecessary prior to the time of the Traverse hearing. Why? It was never disputed. There was no formal appraisal that was done of the Hano property prior to the final offer, and none is required. This Court's Enbach decision in Tucker very clearly says an appraisal is not required. The Illinois Supreme Court, in the DuPage County case, very clearly says no appraisal required. In fact, they relied on the advice of an appraiser. So that's the discovery that was sought. The trial court found that's not necessary because it's not in dispute. Does that relate to a good faith offer, though, if there was no appraisal? Does that go to the good faith offer was made, if there was no formal appraisal? What the Illinois Supreme Court has said is that it does not. That the Illinois Supreme Court... That's specifically stated. That's right. The Illinois Supreme Court, in the DuPage County case, specifically said that an appraisal is not required. And they go on to say that the reliance on the advice of an appraiser is normally sufficient to satisfy good faith. In the DuPage case, the Supreme Court case, no appraisal, no formal appraisal was completed. And so that decision is consistent with this Court's Enbach decision in Tucker. The point here is that even the subsequent evidence in this case established that the offer that was made was in good faith. It was four times the appraised value. I guess it's clear in this case, and I know the Court is aware of this, that the circumstance that we find ourselves in is not your typical Illinois Department of Transportation procedure. There was no quick take associated with this. And the complaints in this case were filed after 14 months of hearings at the Illinois Commerce Commission. The Commerce Commission issued an order indicating that there had been considerable evidence presented to the Commission. The Commission indicated that it conducted its own analysis of the evidence that was presented and issued a certificate to Enbridge to operate as a common carrier-by-pipeline. A common carrier-by-pipeline to construct this Line 78 pipeline across 386 parcels in four Illinois counties. A couple of other facts here. The negotiation phase, as I said, during the negotiation phase, consistent with the Illinois Supreme Court's decision in DuPage County, Enbridge relied on the advice of an appraiser. I think what this case comes down to, what this appeal comes down to, is our position that there's really no basis for this appeal. There's no legal merit to the arguments that have been raised, and there's no prejudice that's been shown. With respect to the counterclaim, the trial court ruled that there could be no damage to the remainder based on this temporary easement. It relied on the trunk line decision. That argument has never been contested here. That issue's not contested here on appeal. The interesting thing about this case is that counsel talks about whether the landowner can testify. They had disclosed an expert in this case to testify, an appraiser by the name of Michael McCann. And maybe there's an explanation for it, but they never called McCann to testify at trial. My own feeling is because appraiser McCann could not come up with a value for the temporary easement that was more than the final offer. That's why they didn't call McCann at trial. That's my judgment. Maybe we'll hear a different explanation. That's speculation. Pardon me? That's speculation. Well, that's the facts. The facts are that McCann's opinion on the temporary easement was less than the final offer. Oh, I know, but why he didn't testify? Sure. What they've offered here on appeal is that they say that they weren't prepared to present the evidence necessary to meet their burden of proof on the existence of damage to the remainder. So I suppose that's possible, but you'd have to ask yourself, if you're not able to prove the existence of damage to the remainder, I'm not quite sure how you complete a counterclaim and file it. With respect to the traverse in this case, there was specific discovery that was requested. There was discovery that was not requested. The trial court made that clear in its decision on September 24th of 2014. One thing I do want to point out is that it's the defendant in this case who chose not to make the report of proceedings part of the record, not to make certain reports of proceedings. So the Hanard traverse was before the trial court on two occasions, October 6th and October 15th of 2014. It's on those days that the defendants claimed that there was abusive discretion that happened with respect to rulings on discovery. Yet those reports of proceedings have not been made part of the appellate record. They're available. They just haven't been made part of the record. And there's a new argument that's raised in the reply brief that the defense had only 26 days to respond to this traverse. I think that this kind of an argument is particularly troubling. It's made for the first time in the reply brief. And it's troubling because at the same time they make this argument about the trial court rushing, and that's the inference, that the trial court rushed this traverse to a hearing. At the same time they make that, they don't make the report of proceedings part of the record. And there's a reason that there's a presumption that attaches when you fail to include a report of proceedings in the record. There's a presumption that attaches that the trial court had a proper basis in fact and in law to make the decisions that it made on this date. And the presumption and what the court should presume is that what actually happened that day when the traverse was heard is that there was no objection to the timing of the hearing. Is that a representation was made that the traverse in the Hano case was exactly the same issues as already decided by the circuit court of Will County. That there was a respect for the ruling on discovery that had previously been made. No argument, no attempt to call witnesses. And there should be a presumption that counsel approved the court entering the order that it did, incorporating its prior rulings. In conclusion, the trial court here actually said it best. The trial court said to counsel, you chose not to call your expert McCann, your valuation witness. And he was right, that was their decision, to put on no evidence at the trial. They also chose not to include critical reports of proceedings they now claim were error. They chose not to appeal the trial court's decision that there was no remainder damage caused by the temporary easement. They chose not to include the evidence from the Illinois Commerce Commission that was presented on the issues of public need, public purpose, publicly available information. They chose not to include the discovery responses and the documents that were produced in connection with that evidence that was presented at the Illinois Commerce Commission. And the other thing they did is, the defendants in this case are the ones who decided not to negotiate. So the law in Illinois requires an attempt to negotiate. But it's very clear that Enbridge could not negotiate with itself. So it was the defendants who decided not to respond to either offer that was made by Enbridge prior to the lawsuit being filed. It's for all of these reasons that we ask that this court affirm the decisions of the trial court. Thank you. Thank you, Mr. Stichler. Mr. Plurot, for rebuttal? Yes. A couple points. There was a very subtle comment about in the final offer letter, the basis of the offer was outlined. And when you go to that, there are a couple lines on that sheet of paper that say temporary, permanent. That's not a basis. A basis would be, for example, we did an appraisal by a licensed appraiser and he has found that this is a fair market value offer. This is a good faith offer. Now the court said you don't need actually an appraisal, but it would be something like we're basing this number on a market study that we did. That's not in that final offer letter. Nothing. Nothing is in there. $700. That's what they wanted to pay him. That comes to less than 50 cents a day for his property for two years. Less than 50 cents a day. And he was not allowed to come up on the stand. Now we talk about it in a brief about why we didn't call the expert. Because on the day of trial, they were allowed to answer the complaint. The counterclaim, which is the damage to the remainder. On the day of trial. Now we weren't prepared to prove damages to the remainder. We were prepared at trial to show the value of those. Why not? Well, because there had never been, not one time, they had never contested that there were going to be damage to the remainder. We alleged that. We stated that in the counterclaim, and never one time did they object to that. And we got to the day of the trial, and we said perfect. We don't have to disclose that. Wasn't the answer to what? What's that? His answer was to a week before trial. No, it was not a week before trial. I believe it was on Thursday when they alleged. Trial was to start, I believe, I'm going from memory, on Monday. And there was a motions eliminating trial hearing. I thought it was on Thursday. And they alleged they gave it to me, but then there's a document in the brief that says they sent it on that day, served it on us. We got it on the day of trial. I guess my question is, when was the response due? The response was due within 21 days of our... And when was that? Your Honor, I can't, it's in the brief. I don't know that. It's documented in the brief. It was like a week before, wasn't it? No, I think it was more than that, quite frankly. It might have been. I would have to look, because I think that might be correct. Because then we had 21 days to respond to their answer under the Supreme Court rule. So we would have been allowed 21 days, but they hid in their answer... Was that requested? Yes. Well, did we ask, we brought that up at trial saying we have the right to this, and the judge wasn't having that. The judge said no. Was there a request? To file a reply, yes. To have the continuum for 21 days? Yes. Yeah, we asked for a continuum. It's in the materials. We asked for it, we said stop, let us, because we are going to need to have an expert, now that you are, for the first time, contesting damages to the remainder, we're going to need to now have an expert testify about that. Which we never did, and we never did because we were viewing it as admitted. It was admitted that there were damages to the remainder because they never answered it. So, prior to that time, that week, or whatever the exact date was, you did not prepare your witness for testimony even though you didn't know that they wouldn't answer? No, he was prepared to testify what the damages were going to be. To the remainder? To the remainder. Well, that's, the remainder damages... I understand, in terms of his, your preparation of that witness... He was going to testify the damages to the remainder, then there comes the issue of them now saying, well, we have amended the complaint, which they did on the afternoon of the first day to say, we are actually no longer going to take your property. We've converted that complaint, not from a taking, we've converted it now to a temporary easement. And that occurred in the afternoon of the first day of trial, and we're getting ready to testify as to why. Initially, it was just a little tiny sliver across the property, and our expert was going to testify why that would damage to the remainder, because his house was going to be 150 feet from that. And then they amended, and they amended on the day of the trial, at the end of the first day, to say, we're no longer going to do that. We're going to take the pipeline off of that property, and it's going to be on the property next to it. So, thank you. Thank you, Mr. Thurow. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And with that, we can adjourn this bill. Thank you. Please rise. This is called quartered now, Jim.